Final case for this morning is case number 22-13816. Oh, excuse me, wrong case number. No, no problem. It's number 23-13152, Auto Candies, et al. v. Citigroup, Inc. May it please the Court, David Cooper on behalf of the plaintiffs' appellants. This is in some ways a complicated case, but the district court's errors and the need for reversal are fairly straightforward. The district court applied a heightened pleading standard for scienter, justifiable reliance, and agreement that simply do not exist. The court also refused to credit the factual allegations of misrepresentations and reliance that are detailed in the complaint. I'd like to start with the issue of scienter because it was the foundation for much of the district court's opinion and the entirety of the court's basis for dismissal of the aiding and abetting claims. The district court committed a legal error here in applying a strong inference of scienter test that does not apply outside of the securities broad context. Rule 9B is perfectly clear that knowledge, quote, may be alleged generally. The Supreme Court in Iqbal was equally clear that Rule 9, quote, excuses a party from pleading scienter under an elevated pleading standard. And it said exactly what the standard should be for pleading scienter for a fraud claim, and that is the standard of Rule 8A, which is plausibility. The PSL array is equally clear that the heightened standard Congress determined would only apply to actions brought under this chapter, that chapter being for claims for securities fraud. So the standard for scienter for all the claims here is simple. It's the standard of plausibility under Rule 8. Even if we agree with you about that, why can we necessarily impute this knowledge to the city group executives in New York, say, who are having conversations with investors? What gets you from some of these people knew about it to Citibank as an entity knows about it, including those individuals who are communicating? Sure. So a few things. First, city groups, if they had employees who had knowledge of the fraud, that knowledge is imputed to the company. And that's we cite the Chang case from this court, which says that an employee's knowledge is imputed to the corporation as a whole. So the question is, were there any city group employees who had knowledge of the fraud or more specifically, are there plausible allegations of that? And this the allegations far exceed plausibility, frankly, are far more than you'd see in almost any fraud case. And that's because we have an admission from Citigroup CEO that they fired an employee because of his criminal involvement in the fraud. The only response we get from the other side on this is that person could have been a Banamex employee. But if we look at the actual statements from the Citigroup CEO, he did not say or suggest in any way that this was a Banamex employee. He said we quote Citigroup terminated one employee. He said, and this is docket eighty three dash four. We also cite the earnings review statement from the CEO, which says, quote, we've terminated an employee who we believe was criminally involved in the fraud with no statement or reference to Banamex at all. And so at the very least, there is a plausible inference that Citigroup had knowledge of the fraud when their CEO says they terminated someone because of their criminal involvement in the fraud. If that wasn't enough, the Mexican regulators specifically said that Citigroup employees, not Banamex, Citigroup employees had knowledge of the fraud. And I call this court's attention to paragraphs one seventy six to one seventy seven of the complaint. Do you have any case law that suggests that the findings, the criminal findings of another country, how those findings should weigh in our determination of criminal activity of a U.S. corporation? I'm not aware of any case on that. I'm going in either direction. What I'd say is that we're not suggesting remotely that this is binding on U.S. courts. What we're suggesting is at the pleading stage, when the question is, is it plausible that Citigroup had knowledge? When you have Mexican regulators specifically saying that 10 Citigroup employees had violated Mexican criminal law and a Mexican criminal court issued an arrest warrant against three Citigroup employees for the crimes detailed in their report. That is at the very least plausible, especially when you combine it with the fact that Citigroup's own CEO said they fired an employee for criminal involvement. And the fact that if we look at the nature of this fraud, it was apparent on the face of documents that Citigroup had. That is, they have the documents showing the amount of the cash advances and they have the documents showing that it was five times as much as the value of the underlying Pemex contract. Is there any indication in the record? I think I know the answer to this, but as you've pointed out, this is a pretty voluminous record. Is there any evidence in the record of the employee that that was fired that Citigroup the Citigroup CEO is referencing? Was that a Banamex employee? So I don't think we have anything in the record to say exactly who that person was. But I also want to make clear one very simple point, which is that the fact that someone is a Banamex employee, even if we assume that that person is. But again, there's no basis to assume that. But even if we did, that doesn't mean the person's not also a Citigroup employee. That is, a person could be an employee of both. And I think the sort of perfect example of this possibility. You're telling us that there's no evidence in the record of who this person was that is being referenced in the statement that was fired. There's no not that I'm aware of that's alleged in the complaint. I mean, the record is the complaint at this stage. And the complaint says that Citigroup fired its employee for his involvement in the fraud. It cites the documents from the CEO saying that. And there's no basis to believe that this person was not a Citigroup employee. And to be clear, I don't even think Citigroup has said that this person outright is not a Citigroup employee. So, I mean, presumably they know who this person is. Do we know or do you have any allegations about what this person's motivation was? Because it seems perhaps everything is obvious in hindsight, but it seems that this scheme was going to blow up at some point. Do we know what this person or group of people hope to accomplish? Sure. So, I think I can't speak to the personal motivations of these individuals. But what I can say generally is what Citigroup's motivation was. And that was to make money off the deal, which they made tens of millions of dollars. And I know that what they say is, well, but this would inevitably blow up. I think there are a couple of points on that. First is that Citigroup, and this is alleged in the complaint, always believed that the Mexican government effectively would reimburse them. So, the idea that this would blow up wouldn't necessarily blow up on them. It's a big to fail kind of thing. Yes. And it certainly blew up on our clients. They lost a billion dollars. So, it blew up in a very significant way. But whether it would blow up on them and whether they would not ultimately get reimbursed by the Mexican government is an entirely separate question. The second thing is that, frankly, people make short-term decisions all the time, right? They made a lot of money in the short term. Maybe inevitably it would blow up, just like Bertie Madoff. Inevitably, it would blow up. But people commit frauds that would inevitably blow up. And they do so for some short-term gain, even if there is some kind of long-term risk. I guess the reason I was asking that is that Chang says an agent's knowledge will be imputed to the principal unless the agent's interest is entirely adverse to the principal's interest. Meaning, the actions must neither be intended to benefit the corporation nor actually cause short- or long-term benefit to the corporation. Thus, imputations permitted when an agent's actions were designed to turn the corporation into an engine of theft against outsiders, as opposed to when an agent took actions that diminished the assets of the corporation itself. How do you think the allegations here fit within that standard? I think they fit within that standard because we specifically allege that it benefits Citigroup to the tune of tens of millions of dollars. And so there was a clear benefit. And I'll also note that they did not argue here, and I believe did not argue below, that there was an entirely adverse interest on behalf of anyone who is alleged to be an agent or employee. And so if they wanted to make that argument, they could have made that argument. They didn't. And I think the reason they didn't is because the idea of entirely adverse interest doesn't mean that it ultimately could not hurt the company. The question is whether there is some benefit to the company, and clearly here there was, whether or not ultimately there was going to be some downside to Citigroup for engaging in a fraud. Perhaps, perhaps not, if the Mexican government was reimbursing them. But that doesn't satisfy the entirely adverse interest standard. I also want to point out that this difference… Can I ask you one question about the allegations in the complaint? Because I think all of this is going to, certainly we're on a motion to dismiss, come back to the allegations in the complaint. You would agree that when you preface an allegation with, based on information and belief, that pursuant to our court precedent, we don't need to take that as true. That's a conclusory allegation. Would you agree with that? I would not agree that it's considered conclusory if it's on information and belief. I think if it's on information and belief, what this court has said is it's going to look pretty carefully at whether or not it's plausible. But plausible is still the standard, regardless of whether something's on information and belief. So, conclusory, I think, has to do with more, is it a factual allegation versus just sort of a conclusion? But if it's a specific fact that's being alleged, even on information and belief, the question is still whether or not that's plausible. But perhaps the court's going to look a little bit harder at plausibility if it's only on information and belief. I also want to talk about the misrepresentations. And here, the issue is not really a supposed lack of specificity, because the allegations about misrepresentations are incredibly specific and voluminous, as this court noted. What Citigroup really argues about them are a few things. First, some they don't really dispute at all. So, for example, paragraph 488 of the complaint details a specific Citigroup misstatement to many plaintiffs in February 21st, 2014, that OSA was, quote, above board with its financials. They don't dispute that that was, in fact, a misrepresentation. Some others, what they say are, it was Banamex, it wasn't us. So, for example, paragraph 1488 of the complaint, paragraph 1260 of the complaint, those detail allegations about misstatements made by Mr. Granja. And what they say is, well, Mr. Granja worked for Banamex, so, therefore, it doesn't apply to us. And I think for those kinds of misstatements, we have two responses. The first is simply, it's completely undisputed. And the district court noted that there was no dispute on this point, that Banamex was an agent of Citigroup for purposes of this case. They did not dispute that Banamex is an agent, which means that all of the allegations against Banamex are imputed to Citigroup under well-established law. So, that's the first point. The second point is that it's specifically alleged in the complaint in great detail about exactly why Mr. Granja was, in fact, an employee of Citigroup. So, it said that he was a Citigroup managing director, and that Mr. Granja himself, on his own LinkedIn page, referred to himself as a Citigroup managing director from 2010 to 2014. The same basic logic applies to a July 15, 2013 email from Citibank, which, again, was undisputed to be an agent of Citigroup, and said, quote, OSA's financial statements are fine. This is paragraph 938 of the complaint. So, there are very detailed allegations of misrepresentations that are dispositive here, and I see my time is up. I know there are a lot of other issues in the case. If there are any other questions now, I'd be happy to answer them or in rebuttal. Thank you. Good morning. May it please the court. Adam Hackey for Citigroup. The district court properly dismissed this case after affording plaintiffs three amendments to their complaint. Plaintiffs are harshly critical of district court, but the real quarrel is with the pleading standards, and really 9B. When the district court dismissed the second amended complaint, it was both correct and fair when it advised plaintiff to file a new complaint that walks through the particulars of each plaintiff's interactions with OSA and Citigroup, who was there, what was said, and how exactly they relied. That is, of course, exactly what 9B requires. Plaintiffs returned with a much longer complaint and more structured complaint. It takes a long time to read, but the plaintiff by plaintiff structure ultimately reveals what's missing, which I'm going to walk through. And when you step back from things, it's not surprising that plaintiffs can't state a claim against Citigroup. Plaintiffs are creditors of OSA, not Citigroup. Few of them claim to have even interacted with Citigroup. And in limited instances where they do say that they interacted with Citigroup, it was largely in a ministerial function, like a trustee person in New York, to your question, Judge Grant, or unspecified Citigroup personnel. Again and again and again, they don't name the person that they were dealing with. 9B does not allow that. And in most cases, they don't allege, actually in all cases, they don't allege that the person they were dealing with knew anything about the alleged fraud. I don't know that I read the order dismissing the complaint as making those arguments. Can you direct me to where that order made those arguments that you just outlined? The order does several things. And first of all, we're obviously not limited to the order. We made sort of all these arguments below. The order focuses on the fact that the overwhelming preponderance of alleged misstatements came from OSA, not Citigroup. The order focuses very heavily on reliance, and we think correctly, which we'll talk about. And then the order focuses on Sienta, which I'm going to talk about in a moment. Obviously, we have many, many arguments with respect to this complaint, and they have to meet 9B. Do you think the district court got it wrong by saying that a strong inference of Sienta is required to plead common law fraud claims? I do not, Your Honor, in the sense that there are multiple cases in federal district courts interpreting federal law that use that language. We cite them in our brief. But I also agree with the suggestion that it doesn't matter. They did not come close to pleading knowledge with respect to Citigroup. And I want to – I'm going to just react very specifically to the questions you asked my adversary. The memorandum that they refer to from the CEO of Citi, it says that they discovered a fraud. And they can't cherry-pick from these documents what they like and what they don't like. The document says that Citi discovered this fraud in February of 2014. It says that one employee was terminated. It doesn't say it was a Citi employee. How could Citi terminate an employee of another company? It says an employee was terminated. And it is a wholly owned subsidiary. And to come to the point, the person that was criminally charged that they refer to, the person that was terminated was a Banamex employee. Now, you could say that's a factual dispute. But they can't guess. They have to know. This is 9B. They can't say we think it's a Citigroup employee. It doesn't matter what the facts are. It was a Banamex employee. The Mexican government did not arrest anyone in the United States. Everybody arrested in connection with this was in Mexico. And if you look at what their complaint actually alleges, and it's shapeshifted a lot because the very first complaint they filed in this action specifically pleaded that Citi first learned of the fraud in February, which, of course, is true, which, of course, is consistent with the SEC case that was settled against Citi that they rely on so heavily. That punished Citi not for participating in a fraud or aiding and abetting a fraud, but for failure to detect one. Again, they take the parts of the document they like, which is that the government got involved, and they ignore what it said. And if you look at their own pleading, in terms of these employees and who did what, there's a very significant reference to Banamex. They say that the employees that the CMB charged, and I'll get you the site, were Banamex employees, not Citi employees. So, again, one could conclude what we're debating facts. No, they have the burden of proof with particularity, or rather, the burden of pleading with particularity under 9B. They cannot guess. If they are guessing, they don't have the claim. With respect to reliance, I think that's an efficient place to start. The court is familiar with Furnow. In that case, investors brought RICO and fraud claims against the beauty salon company, alleging that they were defrauded into investing in the company. The CEO allegedly made false statements about the company's financial status, mostly through emails and investor presentation documents, supposedly failing to disclose that the numbers were far worse and that there were mounting problems at the company. That's exactly, Your Honors, as is alleged here. And just as was the case here, following three amended complaints, the district judge dismissed for lack of adequate reliance allegations. This court affirmed, saying that the Furnow plaintiffs, quote, alleged only that if defendants had made full and accurate disclosure at the time of sale, plaintiffs would not have invested in the company. The court held that that did not establish the link of transaction causation, because it provides no information about which of the specifically alleged misrepresentations, if any, induced them to purchase shares. That seems to me to be in stark contrast, though, with, for example, paragraph 1496 of the complaint, where the appellants allege that when deciding whether to lease the Titan II to OSA in April 2011 and continuing to lease the vessel between April 2011 and February 2014, Gulf relied on Citigroup's material emissions in the April 2011 meeting relating to its support of OSA and the reliability of the Cass Advance facility. What's wrong with that allegation? Your Honor, what's wrong with that is exactly like Furnow. In Furnow, they allege that information was provided, affirmative information about the company, just like you just described in that allegation, but that information was omitted. And what Furnow and other cases are saying is that to establish plead reliance, you need something more. You need to say what you did something with this information, why it made a difference. That allegation is completely absent. Well, what it did was continue to lease the vessel, decide whether to lease the vessel and continue to lease the vessel. So I'm not sure what you're arguing. Yeah, well, because the cases say that saying I heard a misrepresentation and then I invested or I continued to invest is not enough to plead reliance under 9b. You have to, you can't just wash over that you and then you act and then you assume it was a causal chain. That's what the case says. That's what other cases say. And that's and I would argue that the Furnow allegations are actually in many ways more pointed on the issue of reliance. The other point is that this is not a class action. We have 30 plaintiffs, OK, with very different allegations in terms of the level of interaction, what they did, who they spoke with. And plaintiffs are asking essentially for a presumption that, well, if we please more for this one, just assume it for the rest. This is 30 cases under one cover. They have to do the work of pleading it with respect to each plaintiff. And this they have not done. In terms of the various categories of plaintiffs and before you get to that, let me ask you another question. I don't see where other either party cited Bridge versus Phoenix Bond and Indemnity Company, the Supreme Court case which said that a plaintiff asserting a RICO claim predicated on mail fraud need not show that it relied on the defendants alleged misrepresentations. Is that case relevant here? I do not believe so. Neither party cited it, Your Honor, but I can't speak to the to that decision as applied to these facts. We do know that with respect to the RICO claims, there are substantial independent problems, which is the basis for federal jurisdiction in this case. One of them is the PSLRA bar issue, which we briefed, which is certainly with respect to the bondholder plaintiffs and arguably with respect to all of the plaintiffs, given that it's one count of wire fraud as a predicate. It is a claim that they were deceived into purchasing securities, which would fit like a glove with the PSLRA bar. Now, they say because some of these claims are holder claims, it shouldn't apply because a holder claim isn't recognized under 10B. But there's authority, and we've cited it, for example, from the circuit to the effect that even if the plaintiff doesn't have standing, if it's a securities fraud claim, the bar applies. For example, if you bring an aiding and abetting claim, which is also not recognized under 10B and a private right of action, the PSLRA bar applies. You also have the continuity problem, which is very stark, which is that the only factual allegations, again, these are the well-pleaded non-conclusory factual allegations, are that this conspiracy lasted for six months, ending in February 2014. Prior to that, they allege uninformation belief, which is not sufficient. There are multiple cases holding that that is not enough time for closed-end continuity. And with respect to open-ended continuity, you have to show that this is a way of doing business, an ongoing criminal organization that would not do an internal investigation, fire employees, stop financing an alleged fraud. I mean, they don't even seriously argue that they meet the open-ended continuity requirements. What about the closed-ended continuity requirement? Have they met that? Well, with respect to it, the issue is the duration, Your Honor. There's good authority, and we've cited it. It's consistent that something less than a year is not long enough. Now, they say in a conclusory fashion, no government charged this or said that this was the case. They say in a conclusory fashion that it went back to 2008, but it's expressly on information and belief. And to the question I believe Judge Fryer asked, 9B is not satisfied by information and belief allegations unless the information is exclusively within the knowledge of the defendant, which is not the case here. It's alleged that there was a conspiracy of multiple parties. And the plaintiff pleads underlying facts that would support that inference, and they don't do that. They don't do that at all. They simply just say, on information and belief, it goes back to 2008. There are some general allegations, oh, the ratio of advances may have been larger than the contracts. It's not specific. The only specific allegations they give with respect to payments that were allegedly fraudulent go back six months. It's well set out in our briefs. And again, I would really urge the court to focus on their initial pleading that Citigroup discovered this fraud in 2014, the way that they mix and match and describe BADMX and Citigroup as one of the same, the way that, and he asked, we're not asserting, we are asserting the fact that no Citigroup employee was charged in Mexico with a crime. Those were all BADMX employees. Again, it's not me arguing a summation. They have to plead that Citigroup employees were charged, if that's their basis for Siena, which is what I heard, with some basis. I believe they pleaded that a Citigroup employee was fired. Right. Well, right. Well, they also said that they also said that they were charged. And the Citigroup employee referred to there, although, again, they don't specify it in the complaint. And I don't see how that could meet 9B, was a BADMX. The person referenced in that document is a BADMX employee. But again. What if it wasn't at that point? Have they pleaded enough in that respect? I would argue no, because I think you're basically looking at two different frauds. You know, you asked about the plausibility of this entire fraud. Right. So there's a payment factoring fraud that happens in Mexico. BADMX, there's no dispute, was the party that was working, advancing the funds to OSA and then PEMEX would be billed. That fraud occurred. There's no dispute that there was a fraud there that occurred. There's now all of these interactions with bondholders and shipping vessel companies, et cetera. They're not they haven't pleaded facts suggesting that BADMX, let alone Citigroup, sat down with OSA and said, let's deceive our bondholders. Let's deceive the shipping vessel companies. No, you have a localized fraud. Right. Which was completely antithetical to the interests of Citigroup. Citigroup lost nearly 500 million dollars here. And was charged by the SEC for failing to protect itself from that. So you had a localized fraud. So I think you have to look, interaction by interaction, at who it is that is speaking with these plaintiffs. And what did they know? We cited below. I mean, there are multiple cases. Back up again. I'm not sure you answered my question, which is if this person that they have mentioned in their complaint worked for Citigroup, have they have they pleaded knowledge? They have. I would argue that they have pleaded that someone within Citigroup knew that there was a fraud in Mexico. I do not believe they would have pleaded for knowledge of the fraud upon which they are suing, which is that they were deceived by OSA and allegedly Citigroup into making investments and into doing business with this company. I would refer the court to the Mazzaro opinion from the 11th Circuit, 544 F3rd 1230. It says that the corporate official, and this is in the context of federal securities fraud, but the principle comes from common law because it in turn cites a Fifth Circuit case called Southland, which says so. The principle is the person interfacing with the person who says they were defrauded has to know about the fraud for there to be scienter or knowledge. They don't allege that. And this is why these details matter. We can go and we don't have time to do. We could go plaintiff by plaintiff. In most cases, they don't identify who it was that city who was even speaking to. Why doesn't Florida law, though, impute that knowledge to the individuals who are who are speaking? Well, the question of scienter, first of all, I am referring to federal cases, but it comes from common law. And we believe that Florida law would recognize the fact that a person who knows nothing of a fraud and goes out and sells an instrument to an investor is not acting with scienter, is not acting with knowledge. And certainly we can't even begin to do the analysis. And this goes back to these fundamental nine B failures. We can't even begin to do the analysis when they don't tell us who they met with. I mean, these are facts that are within their control. Right. Reliance. Who said what to whom? That is their burden because they can know that. If you go plaintiff by plaintiff, you'll see in many, if not most cases, they don't identify who they spoke with. They don't allege that the person had knowledge of the fraud. So essentially, you're cutting across two different corporate entities. That collectively, as a as a as a corporate family of hundreds of thousands of employees, saying if one person sitting in Mexico that's taking the assumption in your question, judge, work for Citigroup, every single interaction that Citigroup has as a bond trustee sitting in New York, you know, assisting with a presentation is fraud. Everyone in the company is deemed to have knowledge of the fraud. That's not what the center cases say. Right. The center cases focus on does the speaker have the right intent? And particularly in a circumstance where, again, we don't get to assume that it was a Citigroup employee. They need well pleaded facts under Rule 9B that it was a Citigroup employee. They do not have that. The fact that the CEO makes reference to an employee. That could easily be of a consolidated subsidiary does not make that person a Citigroup employee. And again, why are we taking only one statement from that document? The document also says we learned about this fraud in 2012, 2014, February 2014. Sam, over my time, unless the court has any other questions, we'd ask that the court affirm. I'd like to just address four points that Citigroup raises. The first is they say that few plaintiffs interacted with city and only in ministerial ways. That's simply incorrect. We cite throughout our brief. And as I said in my opening here, there are many examples of plaintiffs interacting directly with people who are named specifically as Citigroup employees, literally by name, including Mr. And with with specific allegations, again, paragraph 88 saying exactly why we believe he's a city employee, because he himself said he was a Citigroup employee. The Citigroup argues that there are at least nine appellants where there's a failure to allege any substantive communications with Banamex or Citigroup. Is that true? So I don't know if that's exactly the right number. There are certainly some plaintiffs who do not. There are some who do and there are some who do not. And for those who do not, what they allege is that Osa made misrepresentations to them, which I think is basically undisputed. And that Citigroup participated in the making of those misrepresentations. So we I can point this court to specific here. Let me just find the right paragraph numbers. Page 40 of our of our opening brief provides the full paragraph numbers. I won't go through that at all right now. But if this court wants a good example, paragraphs 233 to 36 of the complaint talks about Citigroup assisting in the preparation of specific presentations made by Osa with Citigroup's logo on those presentations and effectively giving them the information of Citigroup and those presentations being shared with certain subsets of plaintiffs. So the plaintiffs who did not directly interact with Citigroup were still getting information from Citigroup through Osa. Also, I call this court's attention to paragraphs 797 and 938 of the complaint, where Citigroup sent Osa's financial statements directly to the plaintiffs, knowing that they were false. So in two different ways, either through Osa or Citigroup sending those as financial statements, even those who did not directly interact with Citigroup still have claims for fraud. The second point that Citigroup raises, they say that there's no scienter and that the statement from the CEO just says an employee was terminated. It is not written in the passive voice. It says we terminated an employee. And when a CEO of a company says we terminated an employee is far more than a plausible inference that that employee is an employee of that corporation. What about the idea that it was an employee of a subsidiary corporation? If the question is whether that's possible, I suppose it is possible, but it's certainly not the most natural reading of what the CEO said. And certainly, at the very least, there's a plausible inference of that. And I'd also point to the Mexican government's charging. They say that we don't say that it was a Citigroup employee. We specifically, specifically allege, and by name, who these people were and that they were Citigroup employees. Now, they were Citigroup employees in Mexico, but we do specifically allege that they were, in fact, Citigroup employees. This is Paragraphs 176 to 177 of the complaint. The third point that they make is on reliance. They cite the Fernow case. The Fernow case dealt with allegations that were far, far less specific than the allegations of reliance here. And the allegations of reliance here honestly could not have been more specific. What they said was they told these are the specific misrepresentations they made to us. We would have acted differently. We would not have leased vessels. We would have sold our investment, or we would not have provided loans in the case of Rabobank if they had not made those misrepresentations to us, if they had not omitted the truth of the fraud. And it's far more than plausible that had they not had those misrepresentations, had they known about the fraud, that, of course, they would not have not loaned money, would not have leased vessels, would not have continued their investments with OSA. The last point I want to make is on this question of the PSLRA bar. And they don't cite to the statute. And what the statute says is that you cannot rely on conduct that would constitute fraud in the purchase or sale of securities. Here, many plaintiffs had nothing to do with securities at all. Even the ones that did, it was not an allegation of fraud in the purchase or sale of securities. The last point they make is on continuity. On the question of continuity, yes, there was an allegation on information and belief that the fraud started in 2008. They say that there are no underlying facts to support that. That is incorrect. There are clear facts to support that the allegation that the fraud began long before 2014. I call this court's attention to paragraph 129 of the complaint, where it's alleged that Citigroup fired an employee for receiving bribes and kickbacks from OSA. So, again, allegations long before 2014 regarding the potential for this fraud make it far more than plausible that it began before 2014. Your friend at the other table seems to draw a distinction between knowledge and scienter and say that even if knowledge is somehow imputed, scienter can't be. What's your response to that? I know of no legal principle or case that supports that. I know that Chang specifically said that a corporation's employee's knowledge is imputed to the corporation. And that is, frankly, as I understand it, black letter law and that a corporation cannot sort of say, well, only this person knew. And therefore, I can, you know, other people in the corporation can make whatever false statements that they want. And frankly, it's not something that they argued below or here in their briefing at all. So the fact that we say that there were employees who knew about this fraud is sufficient without saying that these are exactly the same people who made the misstatements. Thank you. Thank you, counsel. Court is adjourned until tomorrow morning. Thank you.